**Richard J. Harris Law, PC**
Richard J. Harris (SBN 013859)
rjharrislaw@gmail.com
4000 Hickory Fairway Dr.
Woodstock, GA 30188
Telephone: 480-708-9111

**Provost Umphrey Law Firm**
Edward Fisher, Esq.
Texas State Bar No. 24012624
(Pro Hac Vice Admission Pending)
efisher@pulf.com
350 Pine Street, Suite 1100
Beaumont Texas, 77701
Tel: (409) 835-6000
FAX: (409) 813-8682

**Provost Umphrey Law Firm**
Patrick Barrett
Texas Bar No.: 00787042
(Pro Hac Vice Admission Pending)
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-463-4000
pbarrett@pulf.com
Attorneys for Plaintiff
Jane Doe (D.H)

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe (D.H.), an individual,<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>Scottsdale Inns, LLC d/b/a Howard Johnson,<br>Scottsdale Inn, LLC d/b/a Howard Johnson,<br>PRC Investment LLC d/b/a Howard<br>Johnson, Parimal Parmar, and Wyndham<br>Hotels & Resorts, Inc.,<br><br>　　　　　　　　　　Defendants. | No. CV-23-00759-PHX-JJT<br>**FIRST AMENDED COMPLAINT**<br><br>Assigned to the Honorable<br>John J. Tuchi, Judge |

1

COMES NOW Plaintiff Jane Doe (D.H.), by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## SUMMARY

1.     As sex trafficking has grown to epidemic proportions, it has become widely recognized that we must look beyond just the pimp and sex buyer in order to stop sex trafficking. We must look to the other individuals and entities who facilitate and benefit from sex trafficking.

2.     The facilitation of sex trafficking is unlawful under federal law. The Trafficking Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq*, expands trafficking liability beyond the sex seller and buyer to also prohibit individuals or entities from knowingly benefiting or attempting to benefit "financially or by receiving anything of value from participation in a venture which that person knew or should have known" was engaged in trafficking.

3.     This case is about the continuous sex trafficking of D.H. that occurred at a Howard Johnson located at 7110 E Indian School Rd, Scottsdale, AZ 85251 ("subject Howard Johnson"). The subject Howard Johnson was owned and operated by Defendant Scottsdale Inns, LLC, as a franchisee of Wyndham Hotels & Resorts, Inc., and/or by Defendant Scottsdale Inn, LLC, as a franchisee of Wyndham Hotels & Resorts, Inc, and/or by PRC Investment LLC, as a franchisee of Wyndham Hotels & Resorts, Inc., and/or by Parimal Parmar.  Defendants Scottsdale Inns, LLC, Scottsdale Inn, LLC,  PRC Investment

**FIRST AMENDED COMPLAINT**

LLC and Parimal Parmar are collectively referred to herein as "Scottsdale Inn."

4.      As discussed herein, each of the defendants in this case knowingly benefitted from participation in a venture that facilitated trafficking and ultimately, D.H.'s trafficking at the subject Howard Johnson. Accordingly, D.H. brings suit under the TVPRA.

## JURISDICTION & VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

7.      D.H. was trafficked in this District and Division.

## PARTIES

8.  D.H. is a natural person who is currently a resident and citizen of California.

9.      Defendant Scottsdale Inns, LLC d/b/a Howard Johnson is a duly qualified and licensed limited liability company in the State of Arizona. It can be served by its registered agent Registered Agent Solutions, Inc, 300 W. Clarendon Ave, Suite 240, Phoenix, AZ 85013.

10.      Defendant Scottsdale Inn, LLC d/b/a Howard Johnson is a duly qualified and licensed limited liability company in the State of Arizona. It can be served by its registered agent Keith Mishkin, 14602 N. Tatum Blvd., Phoenix, AZ 85032.

11.      Defendant PRC Investment LLC is an Arizona limited liability company that

can be served through its registered agent, Parimal Parmar, 2836 E. Van Buren St., Phoenix, AZ 85008.

12.   Defendant Parimal Parmar is an individual residing in Arizona who may be served with process at 2836 E. Van Buren St., Phoenix, AZ 85008.

13.   Defendant Wyndham Hotels & Resorts, Inc. d/b/a Howard Johnson ("Wyndham") is a Delaware corporation with its principal place of business in New Jersey. It can be served by its registered agent Corporate Creations Network Inc, 3260 N Hayden Road #210, Scottsdale, AZ 85251.

## FACTS

**The Hotel Industry's Role in Sex Trafficking**

14.   What Defendants knew or should have known about the sex trafficking that was occurring in their jointly operated hotel, including the trafficking of D.H., is shaped by the widely known and pervasive relationship between the hotel industry and sex trafficking.

15.   Defendants are aware of the important role that hotels play in the proliferation of sex trafficking and of the revenue they derive from sex trafficking, both directly and indirectly, from sex trafficking that occurs at their properties.   Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.

16.   [1] For years, sex traffickers have "been able to reap these profits with little

**FIRST AMENDED COMPLAINT**

risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

17.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

---

[1] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[2] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016),    http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[3] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell       Hotel       Report       (Oct.       2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[4] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

[5] United States Department of Homeland Security Blue Campaign – One Voice. One Mission.        End        Human        Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited

18.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

---

Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).
[6] *See Id.*

**FIRST AMENDED COMPLAINT**

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

19.    Recognizing the unique vantage point that that hotel owners and staff often have to identify potential human trafficking ventures and victims on their properties, several major hotel chains, including franchisors, franchisees, and owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking. In order to meet that responsibility, several (if not most) major hotel chains have adopted robust anti-human trafficking policies to train its employees to identify and properly respond to the "red flags" of sex trafficking. Each and every Defendant named herein had the opportunity and responsibility to adopt, implement, and enforce similar policies at the Howard Johnson. Unfortunately for D.H., such policies were not in place or were not enforced at the Howard Johnson.

**The Use of Howard Johnson Branded Properties for Sex Trafficking is Prevalent**

20.    The use of Howard Johnson hotels for sex trafficking is well known to Defendants. Defendants have known for years that pimps and traffickers use their hotels to carry out their crimes. Scores of news stories dating back for over a decade highlight

**FIRST AMENDED COMPLAINT**

Defendants' knowledge of such conduct.[7] Defendants knew, or should have known, of the use of Howard Johnson branded hotels for sex trafficking ventures. Dating back to dates prior to the sex trafficking of Plaintiff and continuing thereafter are notable complaints that put Defendants on notice of the frequent use of Howard Johnson hotels including the subject Howard Johnson for commercial sex and other associated illegal activity.

21.    These and other news stories show that the use of Howard Johnsons for sex trafficking was not isolated to one Howard Johnson or geographic area and the common use of Howard Johnson for sex trafficking turned into a nationwide problem that stemmed from decisions at the top.

22.    Each Defendant knew of the sex trafficking crisis prevalent in the hotel industry generally, as well as specifically at Howard Johnson branded hotels, including the subject hotel, and while Defendants claim not to tolerate such activity, the evidence shows and will show at trial that sex trafficking continued at the subject Howard Johnson frequently and long after the trafficking of the Plaintiff.

**D.H. Was Trafficked at the Howard Johnson**

23.    One of the lives devalued and otherwise adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking was D.H.

---

[7] Barton Deiters, *Alleged victims testify in teen prostitution and human trafficking case*, MLive (Feb. 7, 2012), https://www.mlive.com/news/grand-rapids/2012/02/alleged_victims_testify_in_tee.html; Change.org, *Stop Wyndham Hotel Staff from Supporting Child Sex Trafficking in Wyndham Hotels*, https://www.change.org/p/stop-wyndham-hotel-staff-from-supporting-child-sex-trafficking-in-wyndham-hotels (last visited April 27, 2023); ILEANA MORALES and JESSICA VANDER VELDE, *Fugitives In Murder Arrested In Tampa*, Tampa Bay Times (Dec. 15,

24.     From approximately February to May 2013, D.H. was repeatedly trafficked for sex at the Howard Johnson located at 7110 E Indian School Rd Scottsdale AZ 85251.

25.     The hotel rooms in which D.H. was trafficked were frequently paid for with cash or prepaid card and D.H. dressed provocatively and avoided eye contact and interactions with others when checking in.

26.     The "Do Not Disturb" sign was used constantly.

27.     D.H. requested room or housekeeping services (additional towels, new linens, etc.) but denied staff entry into the room and refused cleaning services for multiple days, all signs of a sex trafficking venture occurring that the hotel staff observed.

28.     When staff was allowed into the room, they would have seen large amounts of cash and sex paraphernalia (condoms, lubricant, lotion, etc.) and smelled bodily fluids and musk.

29.     There was also heavy foot traffic in and out of D.H.'s room involving men who were not hotel guests. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time, which are signs of sex trafficking that hotel staff observed.

30.     Because policies purportedly enacted and enforced by Wyndham to identify signs of sex trafficking and stop it from occurring were not properly implemented at the Howard Johnson by either Defendant Wyndham or Defendant Scottsdale Inns, LLC, D.H.'s trafficker was able to continue the trafficking venture at the Howard Johnson. Had

---

2010),     https://www.tampabay.com/archive/2010/12/15/fugitives-in-murder-arrested-in-tampa/.

**FIRST AMENDED COMPLAINT**

Defendant Wyndham enforced the policies and procedures they enacted to prevent trafficking from occurring within their Howard Johnson branded hotels after observing an obvious sign of trafficking as described above, D.H.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Howard Johnson. Furthermore, had Defendant Scottsdale Inns, LLC properly followed the franchise policies enacted by Wyndham to identify and prevent trafficking from occurring at Howard Johnson branded hotels as described above, D.H.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Howard Johnson.

31.     Despite obvious signs of human trafficking and indicators of commercial sex activity, Defendants failed to recognize, stop, or report the venture occurring on the premise that resulted in D.H.'s trafficking and consequently, actively facilitated the trafficking venture. The Defendants harbored or otherwise facilitated a sex trafficking venture on their hotel properties and accordingly, benefited, financial and otherwise, from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

32.     Defendants continued to allow illegal activities, including prostitution, to occur at the subject Howard Johnson, according to internet reviews.

- TripAdvisor review from June 29, 2014 stating "ac didnt work they had blood or something on walls bathtub slippery thank god for shower curtain rod and had HOOKERS coming and going all the time NASTY will Never stay here again not worth the price at all!!!"[8]

---

[8] https://www.tripadvisor.com/Hotel_Review-g31350-d74158-Reviews-Howard_Johnson_by_Wyndham_Scottsdale_Old_Town-Scottsdale_Arizona.html

- Kayak review from April 21, 2021 stating "Niehboring room had visitors coming and going at all hours? Suspicious activity for sure. Manager was unconcerned? The outside stairways and walkways were filthy. Management allowing activity in niehboring room to continue day and nite? That was ridiculous! Drug deals?? Who knows?"[9]

33.     Defendants, acting by and through their agents, managers, vice-principals and employees, did not act to reduce or eliminate the human sex trafficking in the subject Howard Johnson, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

**Scottsdale Inn, as Franchisee, Was Required to Report to the Franchisor, Wyndham**

34.     The relationship between Scottsdale Inn, as franchisee, and Wyndham, as franchisor, was governed by a franchise agreement.

35.     At all material times, Wyndham had robust reporting requirements in place for its franchisees, such as Scottsdale Inn..

36.     Wyndham requires its franchisees, such as Scottsdale Inn, to report all suspected instances of crime at Howard Johnson branded properties.

37.     Based on information observed by the staff at the subject Howard Johnson, reports should have been made to Defendant Wyndham about the sex trafficking of D.H.

38.     Defendant Wyndham exercised pervasive and systematic control over Defendant, Scottsdale Inn.

---

[9] https://www.kayak.com/Scottsdale-Hotels-Howard-Johnson-by-Wyndham-Scottsdale-Old-Town.433785.ksp

**FIRST AMENDED COMPLAINT**

39.     Defendant Wyndham exercised an ongoing and systemic right of control over Scottsdale Inn regarding the operation of the subject Howard Johnson.

40.     At all relevant times, Scottsdale Inn was subject to and required to comply with franchise agreement standards, policies, and rules adopted by Defendant Wyndham. These standards and policies are detailed and control the specific manner and means by which Defendant Scottsdale Inn must operate the subject Howard Johnson.

41.     Wyndham requires its franchisees, such as Scottsdale Inn, to report all suspected instances of sex trafficking at Howard Johnson branded properties.

42.     Wyndham required its franchisees, such as Scottsdale Inn, to allow Wyndham to regularly inspect its Howard Johnson branded hotels.

43.     Wyndham regularly inspected the Howard Johnson.

44.     One of Wyndham's most valuable assets is its brand.

45.     Wyndham required Scottsdale Inn to adhere to strict requirements, including but not limited to:

- standardized training methods for employees at the Howard Johnson;

- building and maintaining the Howard Johnson in a manner specified by Wyndham;

- standardized or strict rules of operation for the Howard Johnson;

- regular inspection of the Howard Johnson and its operation by Defendant Wyndham;

- prices fixed by Defendant Wyndham for the Howard Johnson;

**FIRST AMENDED COMPLAINT**

- Defendant Wyndham provided an online booking platform for the Howard Johnson;

- Defendant Wyndham established reporting requirements for the Howard Johnson; and

- other actions that deprived Defendant Scottsdale Inn of independence in the business operations of the Howard Johnson.

46.    Wyndham regularly advised Defendant Scottsdale Inn on operational changes necessary for it to remain in compliance with Wyndham's strict regulations

47.    Wyndham had the ability to impose fees or fines on Scottsdale Inn. Furthermore, at all material times, Wyndham retained an absolute right to cancel its franchise agreement with Defendant Scottsdale Inn if Wyndham's rules were violated or if Scottsdale Inn otherwise failed to comply with its contractual obligations.

48.    At all relevant times, Defendant Scottsdale Inn acted as the agent of Defendant Wyndham when operating the subject Howard Johnson.

49.    Wyndham and Defendant Scottsdale Inn shared control of the terms and conditions of the employment of staff at the subject Howard Johnson and, therefore, Defendant Wyndham and Defendant Scottsdale Inn are joint employers. Upon information and belief, Defendant Wyndham exercised control over the terms and conditions employment of staff at the subject Howard Johnson.

50.    Therefore, as a result of the strict reporting requirements, at all material times, each and every Defendant knew or should have known of their facilitation of sex

**FIRST AMENDED COMPLAINT**

trafficking at the Howard Johnson, including the facilitation of the sex trafficking of D.H.

**D.H.'s Trafficking Could Have Been Prevented at the Howard Johnson**

51.     At all material times, each and every Defendant owned, operated, managed, supervised, controlled, and/or was responsible for the operations of the Howard Johnson.

52.     Defendants acted jointly to rent rooms at the Howard Johnson, with Wyndham retaining control over reservation systems and policies, training, and protocols as further described in this Complaint.

53.     Defendants were jointly responsible for customer safety and, specifically, prevention of human trafficking at the Howard Johnson. Defendant Wyndham retained control over, and thus had a duty with respect to, customer safety at the Howard Johnson generally and specifically regarding detection of and response to human trafficking at the Howard Johnson.

54.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Howard Johnson hotels across the country, and the signs present at the subject Howard Johnson, each and every Defendant had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking and not to participate in or benefit from the facilitation thereof. Each and every Defendant failed to do so and thus facilitated sex trafficking that operated out of Howard Johnson.

55.     The most effective weapon against sexual exploitation and human trafficking is education and training.[10] As ECPAT concluded:

---

[10] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

**FIRST AMENDED COMPLAINT**

The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[11]

56.   This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[12] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

57.   If the Defendants had adequately trained and implemented guidelines, "red flags," training policies and procedures, and other recommendations adopted in the industry, each and every Defendant would have or should have known of D.H.'s trafficking at the Howard Johnson and would have been in a position to prevent the trafficking of D.H.

58.   The "red flags" and signs of a sex trafficking venture described above were observed by Defendant Scottsdale Inn. Upon information and belief, Scottsdale Inn should have reported the signs of sex trafficking to Defendant Wyndham.

---

[11] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

**FIRST AMENDED COMPLAINT**

59.     Had each and every Defendant educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the Howard Johnson, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

60.     Each and every Defendant's active decision not to prevent and stop sex trafficking and sexual exploitation at their hotels, including the Howard Johnson, makes them accountable to victims of sex trafficking, including the Plaintiff D.H.

61.     Thus, each and every Defendant engaged in acts and omissions that were supported, facilitated, harbored, and otherwise furthered the trafficker's sale and victimization of D.H. for commercial sexual exploitation. More specifically, the Defendants rented rooms to D.H's trafficker, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and took no action to abide by Wyndham's own self-imposed anti-trafficking measures. This and related behavior by Defendants provide an ample basis to conclude that they participated in the venture that trafficked D.H.

62.     The motivation behind each and every Defendant's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; each and every Defendant ignored all of the signs of and/or solutions to human trafficking out of an

---

[12] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

**FIRST AMENDED COMPLAINT**

unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Each Defendant Knowingly Benefitted from D.H.'s Sex Trafficking**

63.     Plaintiff alleges that each of the Defendants knowingly received benefits from participating in the venture that facilitated D.H.'s trafficking at the Howard Johnson.

64.     As a result of the strict reporting requirements at all material times, both Defendants knew they were both facilitating and benefitting from sex trafficking at the Howard Johnson including the sex trafficking of D.H.

65.     Wyndham, as franchisor, generates substantial income from operations of hotels such as the Howard Johnson. In exchange for providing the services described above and more specifically delineated in the controlling franchise agreement, Wyndham received a share of the profits from room rentals collected by Defendant Scottsdale Inn at the Howard Johnson. The primary source of Wyndham's income is the franchising royalty fee, but Wyndham also profits from reservation fees, marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents. The fees generated by Wyndham are primarily based on gross room rentals; therefore, Wyndham's profits increase with each room rental.

66.     Defendant Scottsdale Inn, as franchisee, profited from every stay by every patron at the Howard Johnson, both from room rentals and other hotel services.

67.     Upon information and belief, Wyndham knowingly benefitted from its participation in the sex trafficking venture carried on at the Howard Johnson in that it

**FIRST AMENDED COMPLAINT**

received a portion of the proceeds collected by its franchisee.

68.     Therefore, at all material times, Defendant Wyndham and Defendant Scottsdale Inn received monetary payment for the rental of rooms at the Howard Johnson, including the rooms where D.H. was being trafficked.

69.     Despite knowledge of the sex trafficking venture occurring at Howard Johnson, both Defendant Scottsdale Inn and Defendant Wyndham continued to financially benefit from D.H.'s stay at located at the Howard Johnson, all while doing nothing to prevent or stop criminal activity-sex trafficking, including the trafficking of D.H., from occurring on their property.

70.     As a result of the monies paid by D.H.'s trafficker to the secure rooms for her trafficking at the Howard Johnson, Defendant Wyndham and Defendant Scottsdale Inn knowingly benefitted from participating in the venture that trafficked, harbored, and maintained D.H.'s trafficking at the Howard Johnson.

## CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

71.     D.H. incorporates all other allegations.

72.     At all relevant times, D.H. was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

73.     Defendants are liable as perpetrators within the meaning of 18 U.S.C. § 1595(a) because in the ways described above:

- Each Defendant knowingly or recklessly participated in harboring, maintenance, and/or other acts in further of sex trafficking, including the sex

**FIRST AMENDED COMPLAINT**

trafficking of D.H.; and

- Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

74.    Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a)  because, as described above, each and every Defendant knowingly benefitted, by receiving financial and other compensation, for their participation in a venture they knew or should have known was engaged in sex trafficking, in violation of the TVPRA, 18 U.S.C. § 1591, *et seq*.

75.    Despite knowledge of D.H.'s sex trafficking by the Defendants, D.H.'s trafficker was able to continue renting rooms for the sexual exploitation of D.H. at the Howard Johnson.

76.    Each Defendant participated in a venture together and with, among others, D.H.'s trafficker. Despite the fact that Defendants knew or should have known that D.H. was being sex trafficked in violation of the TVPRA, D.H.'s trafficker was able to continue renting rooms for the sexual exploitation of D.H. at the Howard Johnson. D.H.'s sex trafficker frequently used the subject Howard Johnson because they knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each

**FIRST AMENDED COMPLAINT**

Defendant profited while D.H. 's trafficker was able to rent a secure venue to earn profits by trafficking D.H. Each Defendant participated in the venture by continually renting rooms to D.H.'s trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of D.H.'s trafficking.

77.     Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including D.H. at the Howard Johnson, enabled and contributed to the sex trafficking of D.H.

78.     Each Defendant received substantial financial benefits as a result of these acts and/or omissions. Wyndham received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the Howard Johnson. Scottsdale Inn received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the Howard Johnson.

79.     The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

80.     Each Defendant's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to D.H.

81.     D.H. further alleges that, as a result of the relationship between Wyndham and Scottsdale Inn, Wyndham is vicariously liable for the acts of Scottsdale Inn, including at the Howard Johnson. Factors that support this allegation are that Wyndham shared

**FIRST AMENDED COMPLAINT**

profits, standardized employee training, standardized and strict rules of operations, Wyndham controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, Wyndham had the right to terminate any franchisee, including Scottsdale Inn, that failed to comply with the requirements promulgated by Wyndham. Thus, Wyndham retained control, or the right to control, the mode and manner of work contracted for.

82.     D.H. further alleges that Wyndham is vicariously liable for the acts and omissions of the staff at the subject Howard Johnson because Wyndham, together with Scottsdale Inn, acts as the joint employer of these employees because Wyndham and Scottsdale Inn jointly control the terms and conditions of their employment.

## DAMAGES

83.     Wyndham and Scottsdale Inn's acts and omissions, individually and collectively, caused D.H. to sustain legal damages.

84.     Wyndham and Scottsdale Inn are joint and severally liable for all past and future damages sustained by D.H.

85.     D.H. is entitled to be compensated for personal injuries and economic damages, including:

> a. Actual damages;
>
> b. Direct damages;
>
> c. Incidental and consequential damages;
>
> d. Mental anguish and emotional distress damages (until trial and in the future);

**FIRST AMENDED COMPLAINT**

    e.  Lost earning capacity in the future;

    f.  Loss of self-esteem and self-worth;

    g.  Necessary medical expenses;

    h.  Physical pain and suffering;

    i.  Physical impairment;

    j.  Emotional impairment;

    k.  Unjust enrichment; and

    l.  Penalties.

86.  D.H. is entitled to exemplary damages.

87.  D.H. is entitled to treble damages.

88.  D.H. is entitled to recover attorneys' fees and costs of court.

89.  D.H. is entitled to pre- and post-judgment interest at the maximum legal rates.

90.  A constructive trust should be imposed on Wyndham and Scottsdale Inn, and the Court should sequester any benefits or money wrongfully received by Wyndham or Scottsdale Inn for the benefit of D.H.

## DISCOVERY RULE

To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time Plaintiff was harmed, Plaintiff did not know that she was the victim of human trafficking, that her injury arose from being trafficked at Defendant(s) hotels or that she was a person trafficked, much less that she was being

**FIRST AMENDED COMPLAINT**

victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, and certainly not more than ten years before suit was filed. Moreover, at the time the trafficking occurred, Plaintiff did not know what "human trafficking" was, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the existence of a cause of action until shortly before suit was filed, and certainly not more than ten years before suit was filed.

## JURY TRIAL

91.    D.H. demands a jury trial on all issues.

## RELIEF SOUGHT

92.    Wherefore, D.H. respectfully requests judgment against Wyndham, Scottsdale Inns, LLC, Scottsdale Inn, LLC, PRC Investment LLC, and Parimal Parmar, jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

**Richard J. Harris Law, PC**
By:____/s/_____
Richard J. Harris (SBN 013859)
*rjharrislaw@gmail.com*
4000 Hickory Fairway Dr.
Woodstock, GA 30188
Telephone: 480-708-9111

**PROVOST ★ UMPHREY LAW FIRM**
Edward Fisher (PHV Pending)
State Bar No.: 24012624

23

350 Pine Street, Suite 1100
Beaumont, Texas 77701
Telephone: (409) 838-8813
efisher@pulf.com
        and
Patrick Barrett (PHV Pending)
Texas Bar No.: 00787042
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-463-4000
pbarrett@pulf.com

*Attorneys for Plaintiff*

**FIRST AMENDED COMPLAINT**