**DLA PIPER LLP (US)**
Laura Sixkiller (SBN 022014)
laura.sixkiller@us.dlapiper.com
Kyle T. Orne (SBN 032438)
kyle.orne@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
Fax: 480.606.5101
DLAPHX@us.dlapiper.com

**DLA PIPER LLP (US)**
David S. Sager (*pro hac vice* forthcoming)
david.sager@us.dlapiper.com
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973.520.2570
Fax: 973.215.2604

*Attorneys for Defendant*
*Wyndham Hotels & Resorts, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jane Doe (D.H.), an individual,<br><br>Plaintiff,<br><br>v.<br><br>Scottsdale Inns, LLC d/b/a Howard Johnson; Scottsdale Inn, LLC d/b/a Howard Johnson; PRC Investment LLC d/b/a Howard Johnson; Parimal Parmar; and Wyndham Hotels & Resorts, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00759-JJT<br><br>**WYNDHAM HOTELS & RESORTS, INC.'S MOTION TO DISMISS** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Wyndham Hotels & Resorts, Inc. ("WHR") moves to dismiss Plaintiff's First Amended Complaint (Dkt. 10 ("First Amended Complaint" or "FAC"), which asserts a claim for so-called "participant" liability under 18 U.S.C. § 1595, the William Wilberforce Trafficking Victims Protection

Reauthorization Act ("TVPRA"), for failure to state a claim upon which relief can be granted against WHR.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff alleges that she was trafficked for sex in 2013 at a Howard Johnson® branded hotel located in Scottsdale, Arizona. Plaintiff has not identified or sued the alleged trafficker or the men with whom she was forced to have sex. Rather, Plaintiff has sued WHR, which currently is the ultimate parent company of the franchisor of the Howard Johnson® brand, and the independently owned and operated franchisee and its principals (the "Franchisee Defendants").

The crux of Plaintiff's First Amended Complaint is that her life was "adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking" in the hotel industry. FAC ¶¶ 22-23. The First Amended Complaint goes on to explain that "policies purportedly enacted and enforced by [WHR] to identify signs of sex trafficking and stop it from occurring were not properly implemented" at the Howard Johnson® location. FAC ¶ 30. Plaintiff does not plausibly allege that WHR knew or should have known of the venture that engaged in sex trafficking or that WHR participated in that venture, necessary elements of a claim against an alleged participant under the TVPRA. Accordingly, Plaintiff has no direct claim against WHR under Section 1595(a) of the TVPRA. Plaintiff's attempt to hold WHR vicariously liable for its subsidiary's franchisee's alleged failure to prevent Plaintiff's sex trafficking also fails. Not only does Plaintiff fail to plausibly allege a viable claim against the franchisee to impute to WHR, but also the TVPRA does not provide for vicarious liability, and, even if it did, Plaintiff does not allege sufficient facts to establish vicarious liability should apply here against the parent company of the Franchisee Defendants' franchisor. The First Amended Complaint should, therefore, be dismissed as to WHR.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that "[f]rom approximately February to May 2013"[1] she was trafficked for sex at a Howard Johnson® hotel located at 7110 E. Indian School Road in Scottsdale, Arizona (the "Hotel"). FAC ¶¶ 3, 24. Plaintiff acknowledges that the Hotel was owned and operated by an independent franchisee pursuant to a franchise agreement, which Plaintiff contends permitted the franchisor (which was not WHR) to exercise "pervasive and systematic control" over the franchisee. FAC ¶¶ 3, 38.

Plaintiff does not allege that WHR—or the franchisor or any of the Franchisee Defendants—participated in Plaintiff's alleged trafficking. Indeed, the First Amended Complaint does not allege any facts regarding the alleged trafficker. Plaintiff's theory is that hotels play an important role in the proliferation of sex trafficking, that Defendants should have known "pimps and traffickers use their hotels to carry out their crimes," and that, due to their "inattention to the prevention and eradication of sex trafficking," Defendants failed to "recognize, stop, or report" her trafficking at the Hotel. *See, e.g.*, FAC ¶¶ 14-17, 20, 23, 31. Plaintiff further alleges that there were signs of her alleged trafficking – that someone who is not identified paid for rooms "with cash or prepaid card," that Plaintiff "dressed provocatively and avoided eye contact and interactions," that the "Do Not Disturb" sign was used, that Plaintiff requested towels and linens but otherwise refused housekeeping, and that "[t]here was also heavy foot traffic in and out of D.H.'s room involving men who were not hotel guests." FAC ¶¶ 25-29. Plaintiff suggests that, had franchisee Hotel staff entered the room, "they would have seen" and "smelled" indicia of commercial sex. FAC ¶¶ 28-29. Plaintiff does *not* identify - by name, physical description, or otherwise – anyone at the Hotel with whom she allegedly interacted or who witnessed any of these "signs." Moreover,

---

[1] Plaintiff commenced this action on May 3, 2023, more than ten years after the alleged trafficking commenced. By failing to specify when the trafficking ended, Plaintiff presumably seeks to avoid dismissal based on the applicable statute of limitations. In the event the Court denies this motion, the Court should order Plaintiff to amend to provide this information to prevent wasting the parties' and the Court's resources on a clearly time-barred claim.

Plaintiff does not allege any facts to suggest that WHR or the franchisor knew of or interacted with Plaintiff's trafficker. Plaintiff certainly does not allege any facts to suggest that WHR participated in the venture that was responsible for her trafficking.

Plaintiff effectively concedes that her TVPRA claim is not based on WHR's alleged participation in a venture, but rather a failure to prevent it. The First Amended Complaint alleges that she was "adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking" and "policies purportedly enacted and enforced by [WHR] to identify signs of sex trafficking and stop it from occurring were not properly implemented" at the Hotel. FAC ¶¶ 23, 30. Searching for support, Plaintiff alleges that Defendants knew of "prostitution" at the Hotel based on a TripAdvisor review from June 29, 2014 (more than a year after Plaintiff's alleged trafficking) and a Kayak review from April 2021 (eight years after Plaintiff's alleged trafficking, with no mention of prostitution). FAC ¶ 32. The First Amended Complaint argues that "the most effective weapon" against trafficking is "education and training" and concludes that "[h]ad each and every Defendant educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs," Defendant "could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened." FAC ¶¶ 55, 59. Plaintiff's allegations fail to state a claim against WHR.

### III. ARGUMENT

A.  **Legal Standard.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only if the complaint alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a plaintiff generally need not provide "detailed factual allegations," the allegations must offer more than "labels and conclusions" and consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted). The Court is also not "required to accept as true allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Further, the Court "cannot assume any facts necessary to [a plaintiff's claim] that they have not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005).

**B.    Plaintiff Fails to State a Direct Liability Claim under the TVPRA.**

Section 1595 of the TVPRA provides a trafficking victim with the right to "bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" trafficking. 18 U.S.C. § 1595(a). Plaintiff does not contend that WHR, the ultimate parent company of the franchisor of the Howard Johnson® hotel brand, interacted with or had an agreement with anyone who committed a trafficking crime, much less that WHR knowingly participated in a trafficking "venture" that was responsible for trafficking Plaintiff. Rather, Plaintiff seeks to hold WHR liable for failing to prevent her trafficking. That is not the law.

To establish direct liability against WHR, Plaintiff must plead facts plausibly showing that WHR (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to Plaintiff, and (4) WHR knew or should have known that undertaking or enterprise violated the TVPRA as to Plaintiff. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (hereinafter "*Red Roof*").[2]

---

[2] Plaintiff also states, in conclusory terms, that all "Defendants are liable as perpetrators" under the TVPRA. FAC ¶ 73. To establish perpetrator liability, Plaintiff would need to allege that WHR "(i) knowingly; (ii) in interstate or foreign commerce; (iii) recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed], patronize[d], or solicit[ed] by any means a person; (iv) knowing, or, in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (v) to cause the person to engage in a commercial sex act." *Doe v. Fitzgerald*, No. CV 20-10713-MWF (RAOx), 2022 WL 2784805, at *3 (C.D. Cal. May 13, 2022). Plaintiff alleges no such facts.

### 1. Plaintiff does not allege WHR's participation in a TVPRA undertaking or enterprise that violates the TVPRA as to Plaintiff.

"The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Red Roof,* 21 F.4th at 725; *In re Facebook, Inc.,* 625 S.W.3d 80, 96 (Tex. 2021) ("'Participation' typically entails, at a minimum, an overt act in furtherance of the venture.") "[A]n allegation of but-for causation does not establish that [a defendant] tacitly agreed to the sex trafficking of Plaintiff or others." *J.B. v. G6 Hospitality, LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020). Thus, to sufficiently allege participation to support a claim under Section 1595(a), the plaintiff must plausibly allege "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019).

For example, the Seventh Circuit recently found such a continuous relationship between Salesforce and the now defunct Backpage.com. *G.G. v. Salesforce.com, Inc.*, - F.4th -, 2023 WL4933015, at *13 (7th Cir. Aug. 3, 2023). In that case, the plaintiff alleged that Backpage was trying to keep up with customer demand and scale its website for sex trafficking and partnered with Salesforce to support that growth. *Id.* at *12. Through multiple lucrative contracts, Salesforce provided Backpage "targeted solutions addressed to the needs of Backpage's business, repeatedly assessed Backpage's operational needs, and provided active, ongoing support that was tailored to those needs." *Id.* at *11. (internal quotations omitted). "With that support, Backpage was able to build relationships with more street-level traffickers, to increase the scale of its operations, and to increase the trafficking conducted through its site." *Id.* at *12 (internal quotations omitted). As the Seventh Circuit succinctly stated, "[i]n short, Salesforce facilitated the growth of Backpage's business, a business that was almost exclusively a sex-trafficking business and . . . whose business model was built upon systematic and widespread violations of Section 1591." *Id.* The Seventh Circuit then explicitly distinguished such a relationship from hotel franchisors, by

explaining that franchisor defendants are "one step removed from the sex traffickers (i.e. street-level trafficker - > hotel - > franchisor)." *Id.* at *13.

Plaintiff alleges no facts plausibly showing WHR's participation in any undertaking or enterprise engaged in trafficking at the Hotel. Plaintiff alleges no facts showing a continuous relationship between WHR or the franchisor for the Hotel, and Plaintiff's unspecified trafficker. Plaintiff does not even allege that WHR (or the franchisor) interacted at all with Plaintiff's unspecified trafficker or any other unidentified participants in the venture.

Rather, Plaintiff alleges that WHR failed to prevent her trafficking by enforcing its policies and procedures at the Hotel. Courts across the country have repeatedly held that the alleged failure to prevent trafficking does not constitute participation. *See e.g., L.H. v. Marriott Int'l, Inc.,* 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (holding allegations that "local business venture simply *allowed* the trafficking by 'fail[ing] to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing their profit'" are "not enough to trigger TVPRA liability"); *A.D. v. Marriott Int'l, Inc.,* No. 2:22-CV-645-JES-NPM, 2023 WL 5510268, at *4 (M.D. Fla. Aug. 25, 2023) ("'[T]he 'participation' in the sex trafficking venture is essentially that the alleged franchisor and the hotel operator did not fight hard enough to keep these traffickers from using the hotel. The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.'") (quoting *A.D. v. Marriott Int'l, Inc.,* No. 2:22-CV-645-JES-NPM, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023)); *J.M. v. Choice Hotels Int'l, Inc.*, NO. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022) ("J.M. has not sufficiently alleged defendants, who are franchisors, 'participated in a venture' that trafficked J.M."); *A.D. v. Wyndham Hotels & Resorts, Inc.,* No. 4:19-cv-0120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) (agreeing that "nonfeasance (i.e., the alleged failure to prevent trafficking) is not sufficient.").

Because Plaintiff fails to allege facts plausibly demonstrating that WHR participated in a TVPRA venture with respect to Plaintiff, the TVPRA claim against WHR should be dismissed.

### 2. Plaintiff does not allege WHR knew or should have known about any violation of the TVPRA as to Plaintiff.

Plaintiff does not allege that WHR knew about any alleged venture that was responsible for Plaintiff's trafficking. To the contrary, Plaintiff seems to concede that WHR only would have known if the Franchisee Defendants had reported it to WHR, which Plaintiff alleges the Franchisee Defendants did not do. FAC ¶ 58. Thus, Plaintiff resorts to allegations of general knowledge in the hotel industry of trafficking and two online reviews (only one of which mentions prostitution) that post-date Plaintiff's alleged stay at the Hotel, to argue that WHR should have known of Plaintiff's alleged trafficking. *See* FAC ¶¶ 14-22, 32. These allegations do not satisfy the "knew or should have known" requirement. *See, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff."); *A.D.*, 2020 WL 8674205, at *6 ("General awareness is insufficient to establish that [WHR] knew or should have known that it was participating in a sex trafficking venture by renting rooms to A.D.'s trafficker."). The TVPRA only provides for liability when the defendant knew or should have known of the specific venture in which it participated trafficked a particular plaintiff. *Red Roof*, 21 F.4th at 725.

"[T]o conclude that franchisors like [WHR] . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). If such allegations were sufficient:

> [T]he liability of franchisors—which are further removed from the sex trafficking than the actual hotels are—would be much easier proven than the liability of the hotels themselves. This would make

> no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under the same statute for having only an abstract awareness of sex trafficking in general.

*Id.*; *see also Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *1 (S.D. Tex. Mar. 30, 2021) ("[T]he complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general.")

Plaintiff alleges no facts showing WHR's knowledge of a venture that trafficked Plaintiff.

**C.     Plaintiff Fails to State a Vicarious Liability Claim Under the TVPRA.**

Likely recognizing the pleading deficiencies with her direct claim, Plaintiff states, in conclusory terms, that WHR "is vicariously liable for the acts and omissions of the staff at the subject Howard Johnson because [WHR], together with Scottsdale Inn, acts as the joint employer of these employees …." FAC ¶ 82. The TVPRA does not provide for vicarious liability, nor does Plaintiff plead facts to support vicarious liability anyway.

**1.     The TVPRA Does Not Provide for Agency Liability.**

When Congress creates a tort action by statute but says nothing about secondary liability or expressly includes agency liability, courts assume that Congress intended for the application of "traditional" federal agency law principles. *See Meyer v. Holley,* 537 U.S. 280, 285 (2003); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 754 (1998) ("We turn to principles of agency law, for the term 'employer' is defined under Title VII to include 'agents.'"). Section 1595(a), however, is not silent on secondary liability, nor does it expressly provide for agency liability. It explicitly sets forth certain requirements for secondary liability against non-perpetrators—what the Seventh Circuit Court of Appeals refers to as "participant liability"—referring to those who benefit from participation in "ventures" that commit trafficking crimes, as opposed to "perpetrator liability" against those who engage in the trafficking itself. *G.G.*, 2023 WL 4944015, *5. Common law agency

principles cannot expand that statutory liability in a way that would be inconsistent with the statute's text. *See, e.g.*, *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 184 (1994) ("The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere."); *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 551 (9th Cir. 2013) (refusing to find contributory liability under the Anticybersquatting Consumer Protection Act, because "Congress chose not to impose secondary liability under the ACPA"); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) ("When 'a statute is precise about who ... can be liable' courts should not implicitly read secondary liability into the statute.") (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).

Plaintiff's conclusory allegation that WHR is vicariously liable contradicts the express language of the TVPRA. The TVPRA provides for liability (1) directly against the perpetrators and (2) secondarily against those who benefitted from participation in the perpetrators' ventures. The TVPRA does not provide for the third avenue of liability sought by Plaintiff, to hold WHR secondarily liable for the Franchisee Defendants' secondary liability stemming from perpetrators' direct liability. If Congress intended to permit this second layer of secondary liability, it would have done so. Illustrating this point, Congress recently amended Section 1595(a) to expand the scope of secondary liability, but chose not to adopt the additional layer of secondary liability sought by Plaintiff here. *See* P.L. 117-347, § 102, 136 Stat 6199, 6200 (Jan. 5, 2023) ("Section 1595(a) of title 18, United States Code, is amended by inserting 'or attempts or conspires to benefit,' after 'whoever knowingly benefits.'").[3] Because Plaintiff's theory of liability against WHR is inconsistent with the text of the TVPRA, it should be dismissed.

---

[3] Even if this amendment expanded secondary liability as Plaintiff seeks, it did not have retroactive effect and, so, would not apply here in any event. P.L. 117-347, § 102, 136 Stat 6199, 6200 (Jan. 5, 2023).

### 2. Plaintiff Fails to Plausibly Allege an Agency Relationship.

Even if the TVPRA allowed for a third layer of liability, Plaintiff does not allege a sufficient basis to impute liability from the Franchisee Defendants to WHR. Plaintiff claims that WHR, the parent company of the franchisor, is liable for the acts of the Franchisee Defendants, because the Franchisee Defendants acted as agents of WHR in the operation of the Hotel. FAC ¶ 47.

"To evaluate whether a franchisor is vicariously liable based on an actual agency relationship, the court asks whether the franchisor controls or has the right to control the daily conduct or operation of the *particular instrumentality or aspect of the franchisee's business* that is alleged to have caused the harm." *Simpson v. Pizza Ventura of Tucson*, *LLC*, No. CV-18-0098-TUC-JAS (LCK), 2019 WL 3781546, at *4 (D. Ariz. Apr. 19, 2019) (internal quotations omitted; emphasis added). Plaintiff alleges she was trafficked at the Hotel and that Defendants failed to prevent it, but Plaintiff does not identify anyone who is alleged to have observed any signs of her trafficking, let alone anyone who WHR controls.

Plaintiff just alleges an agency relationship because WHR "exercised an ongoing and systemic right of control over [the Franchisee Defendants] regarding the operations of the [Hotel]" based on the franchisee's obligation to comply with system standards. FAC ¶¶ 39-47. These allegations "fit into the category of franchisor control for standardization across franchise locations, which does not establish vicarious liability . . . ." *Simpson*, 2019 WL 3781546, at *5; Restatement (Third) of Agency § 1.01 cmt. f (2006) (stating that the fact that a franchisor "imposes constraints" on a franchisee and sets "standards in an agreement for acceptable service quality" does not of itself create a right of control). The fact that WHR's subsidiary franchisor "maintained strict guidelines as to the presentation and operation" of the Hotel does not establish that WHR, or its subsidiary franchisor, had control over the Franchisee Defendants' unidentified staff at issue here. *Courtland v. GCEP-Surprise, LLC*, No. CV-12-00349-PHX-GMS, 2013 WL 3894981, at *6 (D. Ariz. July 29, 2013). Plaintiff fails to allege any such control, beyond a single conclusory allegation unsupported by any well-pled facts. *See* FAC ¶ 49.

DLA Piper LLP (US)
Phoenix, Arizona

1      Accordingly, the Court should dismiss Plaintiff's vicarious liability claim against WHR, as courts have done when facing similar allegations against hotel brand franchisors under the TVPRA. *See, e.g., L.H.*, 604 F. Supp. 3d at 1361 ("[T]o the extent L.H. seeks to hold the Hotel [Franchisors] vicariously or indirectly liable, those claims also come up short. . . . L.H., at most, has alleged the Hotel [Franchisors'] ability to maintain consistent brand standards without creating an agency relationship."); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708 (E.D. Mich. 2020) (dismissing TVPRA claim based on agency because the plaintiff "failed to plausibly allege" that the franchisor defendants had "'day-to-day' control" over the franchised hotels); *S.J.*, 473 F. Supp. 3d at 156 (dismissing the TVPRA claim based on agency because the plaintiff's allegations, "even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised [] complete control over the day-to-day operations of the franchisee's business") (internal quotations omitted).[4]

## IV. CONCLUSION

    For the reasons set forth above, WHR respectfully requests that the TVRA claim against WHR be dismissed with prejudice.

///
///
///
///
///
///
///

---

[4] Even if Plaintiff could hold WHR vicariously liable for the franchisee Defendants' violations of the TVPRA, Plaintiff has not pleaded any violation of the TVPRA by the franchisee Defendants, a prerequisite to vicarious liability. *See, e.g., J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021) ("To state a claim for vicarious liability under an agency theory, a plaintiff must plausibly allege that (1) defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595.").

Respectfully submitted this 31st day of August 31, 2023.

**DLA PIPER LLP (US)**

By: *s/ Kyle T. Orne*
Laura Sixkiller
laura.sixkiller@us.dlapiper.com
Kyle T. Orne
kyle.orne@us.dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016-4232
Tel: 480.606.5100
Fax: 480.606.5101
DLAPHX@us.dlapiper.com

David S. Sager (*pro hac vice* forthcoming)
david.sager@us.dlapiper.com
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Tel: 973.520.2570
Fax: 973.215.2604

*Attorneys for Defendant*
*Wyndham Hotels & Resorts, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2023, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. A copy of the same was served via the CM/ECF system to the party on record:

> Richard J. Harris
> rjharrislaw@gmail.com
> RICHARD J. HARRIS LAW, PC
> 4000 Hickory Fairway Dr.
> Woodstock, Georgia 30188
> Tel: 480.708.9111
>
> Edward Fisher (Admitted *pro hac vice*)
> efisher@pulf.com
> PROVOST UMPHREY LAW FIRM
> 350 Pine Street, Suite 1100
> Beaumont Texas, 77701
> Tel:  409.835.6000
> Fax: 409.813.8682
>
> Patrick Barrett, III (Admitted *pro hac vice*)
> pbarrett@pulf.com
> PROVOST UMPHREY LAW FIRM
> 4205 Hillsboro Pike, Suite 303
> Nashville, TN 37215
> Tel: 615.463-4000
>
> *Attorneys for Plaintiff*
> *Jane Doe (D.H.)*

*s/ Marlena Soto*