**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jane Doe,

             Plaintiff,

v.

Scottsdale Inns LLC, *et al.*,

             Defendants.

No. CV-23-00759-PHX-JJT

**ORDER**

At issue is Defendant Wyndham Hotels & Resorts, Inc.'s (Wyndham) Motion to Dismiss (Doc. 32, MTD), to which Plaintiff Jane Doe filed a Response (Doc. 39, Resp.) and Wyndham filed a Reply (Doc. 40, Reply). For the reasons set forth below, the Court grants Wyndham's Motion to Dismiss in part.

## I.     BACKGROUND

In the Amended Complaint (Doc. 10, FAC), Plaintiff alleges the following facts. Plaintiff was a victim of sex trafficking that occurred at a Howard Johnson hotel location in Scottsdale, Arizona (Howard Johnson) from February to May of 2013. (FAC ¶ 24.) The Howard Johnson was owned and operated by Defendant Scottsdale Inn, LLC, as a franchisee of Wyndham. (FAC ¶ 3.) Plaintiff claims that all Defendants were "aware of the important role that hotels play in the proliferation of sex trafficking . . . that occurs at their properties." (FAC ¶ 15.) Plaintiff also claims that all Defendants were aware of policies and procedures recommended by national and local organizations to combat sex trafficking. (FAC ¶¶ 17–18.) These policies were intended to help hotels identify indicators

of sex trafficking, which include: individuals avoiding eye contact and interaction with others, individuals having no control over or possession of money or identification, individuals dressing inappropriately for their age or having lower quality clothing compared to others in their party, possession of bulk sexual paraphernalia such as condoms or lubricant, and use of large amounts of cash or prepaid cards, among other indicators. (FAC ¶ 18.) These policies "were not in place or were not enforced at the Howard Johnson." (FAC ¶ 19.)

During the time Plaintiff stayed at the Howard Johnson, there were a number of signs she was being trafficked. (FAC ¶ 25–29.) The hotel rooms she stayed in were frequently paid for with cash or prepaid card. (FAC ¶ 25.) Plaintiff dressed provocatively and avoided eye contact and interactions with others during check in. (FAC ¶ 25.) The "Do Not Disturb" sign was used constantly. (FAC ¶ 26.) Plaintiff requested additional towels and linens but denied staff entry into the room and refused cleaning services for multiple days. (FAC ¶ 27.) When staff were allowed in the room, they "would have seen" large quantities of cash and sex paraphernalia such as condoms, lubricant, and lotion. (FAC ¶ 28.) Additionally, there was "heavy foot traffic" in and out of Plaintiff's room at unusual hours involving men who were not hotel guests and were present for brief periods of time. (FAC ¶ 29.)

Wyndham and Scottsdale Inn's relationship was governed by a franchise agreement, which included certain reporting requirements and set forth the manner and means by which Scottsdale Inn was required to manage the Howard Johnson. (FAC ¶¶ 34, 36, 40.) However, Wyndham failed to enforce the policies and procedures it enacted to prevent trafficking from occurring at the Howard Johnson. (FAC ¶ 30.) Despise "obvious signs" of human trafficking, Defendants failed to recognize, stop, or report the trafficking happening at the Howard Johnson. (FAC ¶ 31.) Because of these "obvious signs," Scottsdale Inn should have reported the sex trafficking to Wyndham. (FAC ¶ 37.)

In further describing the relationship between Wyndham and Scottsdale Inn, Plaintiff alleges that Wyndham shared profits with Scottsdale Inn, standardized employee

training, standardized rules of operation, controlled pricing and reservations, conducted regular inspections, and provided an online booking platform for the Howard Johnson. (FAC ¶¶ 45, 81.) Wyndham also retained control over customer safety at the Howard Johnson, specifically regarding detection of and response to human trafficking. (FAC ¶ 53.) If Scottsdale Inn failed to comply with the requirements set forth by Wyndham, Wyndham had the right to terminate the franchise agreement. (FAC ¶ 81.)

Plaintiff has brought this suit alleging that each Defendant violated the Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595. Wyndham now moves to dismiss the claim against it under Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted).

Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.    ANALYSIS

Plaintiff brings her claim under the TVPRA, which sets forth that "an individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Under this single cause of action, Plaintiff advances two theories with respect to Wyndham: (1) Wyndham is directly liable for violating the TVPRA as a beneficiary, and (2) Wyndham is vicariously liable for its franchisee's violations of the TVPRA.

### A.    Direct Liability

To state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which the Court can reasonably infer that a defendant (1) "knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which the defendant "knew or should have known has engaged in" sex trafficking. *See* 18 U.S.C. § 1595(a). Wyndham does not contest the first element.

#### 1.    Participation in a Venture

Wyndham first argues that Plaintiff failed to sufficiently allege Wyndham's participation in a venture. (Mot. at 6–7.) In Plaintiff's Response, she relies on two separate venture theories: (1) Wyndham participated in a venture with Plaintiff's sex traffickers (Venture 1), and (2) Wyndham participated in a commercial venture with Scottsdale Inn via their operation of the Howard Johnson (Venture 2). (Resp. at 7–9.)

### a.    Venture 1

Under Venture 1, Plaintiff asserts that Wyndham participated in a venture with traffickers "through direct involvement in the hotel." (Resp. at 8.) Specifically, she alleges that Wyndham was "directly involved" because it controlled the reservation system the franchisee used and the policies regarding payment method and identification. (FAC ¶¶ 52–54, Resp. at 8.) To support this theory, Plaintiff cites *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio Oct. 7, 2019), for the proposition that a franchisor "participates in a venture" with traffickers if it is directly involved in hotel operations related to trafficking. But the *M.A.* court focused its "participation" analysis on the *hotel* defendants. *See M.A.*, 425 F. Supp. 3d at 968, 970 (stating that "[t]he question is whether the Defendant hotels were participating in that venture through 'renting rooms to the sex trafficking venture,'" and noting that the plaintiff alleged "the hotels repeatedly rented rooms and thereby 'participated in the trafficking.'") The plaintiff in *M.A.* adequately alleged that the hotel defendants rented rooms to people it should have known were engaged in sex trafficking. *Id.* at 971. Here, however, Plaintiff alleges only that Wyndham "acted jointly to rent rooms at the Howard Johnson [by] retaining control over reservation systems and policies, training, and protocols." (FAC ¶ 52.) The Eleventh Circuit has held that similar allegations were insufficient to show participation in a venture. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021) (concluding that allegations that the franchisors "'owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms' at the hotels. . . . do nothing to show that the franchisors participated in a" sex trafficking venture); *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) ("While these allegation[s] might be sufficient to state a plausible claim against the specific hotels where Plaintiff was trafficked . . . , they do not make a plausible claim that Wyndham . . . directly participated in a venture that *trafficked* [*the plaintiff*] at the specific facilities she alleges her traffickers used.").

In sum, Plaintiff "fails to connect the dots between Plaintiff's alleged sex trafficking" and Wyndham. *See B.M.*, 2020 WL 4368214, at *4. Plaintiff fails to allege, for example, that her traffickers rented rooms through the reservation system under Wyndham's control. And while Plaintiff alleges that Wyndham controlled certain policies regarding trafficking detection, training, reporting, and responding, Plaintiff fails to allege how those policies and trainings link Wyndham to the operations of her traffickers and her trafficking. The Court therefore concludes that Plaintiff's allegations regarding Venture 1 fall short because Plaintiff fails to plausibly allege that Wyndham participated in a venture with her sex traffickers.

### b.    Venture 2

Additionally, under Venture 2, Plaintiff argues that Wyndham participated in a commercial venture with its franchisee because of its ongoing business relationship, direct involvement in and support of aspects of hotel operations, and continued decision to lend its brand to the franchisee. (Resp. at 10.) Courts that have interpreted the TVPRA's language have concluded that the "venture" at issue need not be a sex trafficking venture, and a plaintiff may satisfy this element by alleging participation in a commercial venture. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553–54 (7th Cir. 2023); *Doe #1*, 21 F.4th at 727. Although Plaintiff does not use the words "commercial venture" in her Complaint, she has alleged sufficient facts to support her argument that she has adequately pled Wyndham's participation in a business venture with the franchisee. For example, the Complaint alleges that Wyndham controlled the Howard Johnson's reservation system, policies, and procedures; Wyndham retained control over customer safety at the Howard Johnson; the relationship between Wyndham and Scottsdale Inn was governed by a franchise agreement; the franchise agreement set forth the standards, policies, and rules that controlled the manner in which Scottsdale Inn was to operate the Howard Johnson; and Wyndham exercised an ongoing and systemic right of control over Scottsdale Inn regarding the operation of the Howard Johnson. (FAC ¶¶ 34–53.) Accordingly, Plaintiff has sufficiently pled Wyndham's participation in a business venture.

## 2. Knew or Should Have Known Venture was Engaged in Trafficking

Under the TVPRA, Plaintiff must also show that Wyndham "knew or should have known" that its business venture was engaged in sex trafficking. By the language of the statute, defendants do not need to have actual knowledge of the sex trafficking for civil liability under the TVPRA. Plaintiff need only allege facts to support a defendant's constructive knowledge.

Plaintiff's argument proceeds as follows. Wyndham had actual knowledge of sex trafficking in the hotel industry and had actual and constructive knowledge of sex trafficking at Howard Johnson properties generally. (Resp. at 12.) Wyndham had policies in place that required the franchisee to identify and report sex trafficking. (FAC ¶¶ 51–54.) At the subject Howard Johnson, there were "obvious signs of human trafficking" (FAC ¶ 31): Plaintiff's rooms were frequently paid for with cash or prepaid card (FAC ¶ 28); she dressed provocatively and avoided eye contact and interactions when checking in (FAC ¶ 28); the "Do Not Disturb" sign was constantly used, and although she requested room or housekeeping services, such as additional towels or new linens, she denied room entry to staff and refused cleaning services for multiple days (FAC ¶¶ 26–27); the rooms contained large amounts of cash and sex paraphernalia and smelled of bodily fluids and musk (FAC ¶ 28); and there was heavy foot traffic in and out of Plaintiff's room by men who were not hotel guests, who entered and left at unusual hours after only being at the hotel for brief periods of time (FAC ¶ 29). Plaintiff also alleges that Defendant regularly inspected its franchisee hotel. (FAC ¶ 43.) Therefore, Plaintiff argues, Wyndham knew or should have known about the trafficking "through the channels it used to monitor the subject Howard Johnson." (Resp. at 13.)

But while Plaintiff's allegations may support a theory that the staff at the Howard Johnson knew or should have known about her trafficking, Plaintiff fails to allege how *Wyndham* knew or should have known about her trafficking. Plaintiff argues that Wyndham should have known of the sex trafficking through the reporting procedures in place, but she also specifically alleges that Wyndham's franchisee failed to report the

- 7 -

alleged sex trafficking. (FAC ¶¶ 35, 37, 58.) And although Plaintiff alleges Wyndham inspected the Howard Johnson, she does not allege any details about what the inspections entailed, nor does she allege that during its inspections, Wyndham actually observed the signs of her trafficking. Plaintiff thus fails to sufficiently allege facts supporting either Wyndham's actual or constructive knowledge of her trafficking. Therefore, the Court will grant Wyndham's Motion to Dismiss with respect to the direct liability theory.

### B.      Vicarious Liability

Plaintiff also alleges that Wyndham is vicariously liable under the TVPRA for the acts of Scottsdale Inn.[1] (FAC ¶¶ 81.) Wyndham argues that it is not vicariously liable because (1) § 1595 does not allow for vicarious liability, and (2) even if it did, Plaintiff has not alleged sufficient facts to establish the requisite agency relationship. (MTD at 9.)

Under Wyndham's interpretation, § 1595 allows for direct liability against a perpetrator and secondary liability against a beneficiary (the liability discussed above). (MTD at 9.) Wyndham thus argues that because the statute contemplates secondary liability without explicitly providing for vicarious liability, vicarious liability is not available under the statute. (MTD 9–10.)

Wyndham, however, fails to identify any court that has adopted its interpretation of § 1595. (MTD at 10.) And courts that have examined this issue have concluded that the TVPRA does not provide guidance on secondary liability; therefore common law rules apply, and a principal can be vicariously liable for the acts of its agent. *E.g. B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, *7 (N.D. Cal. May 19, 2023) (citing *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, *5 (E.D. Cal. Oct. 18, 2022); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 6318707, *8 (N.D. Cal. Oct. 28, 2020); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020)).

---

[1] Under a second theory of vicarious liability, Plaintiff alleges that Wyndham is liable for the acts and omissions of the staff at the Howard Johnson because they were jointly employed by Wyndham and Scottsdale Inn. (FAC ¶ 82.) Wyndham does not challenge this theory. (MTD at 11–12; Reply at 6–9.)

Wyndham also argues that even if the statute allows for vicarious liability, Plaintiff does not allege sufficient facts to establish an agency relationship between Wyndham and Scottsdale Inn. The Ninth Circuit applies agency principles from the Restatement (Third) of Agency. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017). An agency relationship exists when a principal manifests assent that the agent will act on the principal's behalf and subject to its control. Restatement (Third) Of Agency § 1.01 (2006). "While a franchisor-franchisee relationship does not necessarily create an agency relationship . . . a franchisor may be held liable for a franchisee's actions if the franchisor controls the franchisee's day-to-day operations." *J.M.*, 2022 WL 10626493, at *5. In making this determination, "courts focus on the franchisor's control over the instrumentality, the conduct, or the specific aspect of the franchisee's business that caused the alleged injury." *B.J.*, 2023 WL 3569979, at *8 (internal quotations omitted).

Plaintiff's allegations are sufficient for the Court to plausibly infer an agency relationship between Wyndham and Scottsdale Inn. Plaintiff alleges that Wyndham exercised control over the means and manner of Scottsdale Inn's work in the specific aspect of its business that caused the alleged injury to Plaintiff. Specifically, Plaintiff alleges that Wyndham retained control over customer safety at the Howard Johnson regarding detection and response to human trafficking (FAC ¶ 53), held control over the room reservation systems (FAC ¶ 52), required Scottsdale Inn to report sex trafficking (FAC ¶¶ 35–37), required Scottsdale Inn to adhere to various other provisions in its franchise agreement (FAC ¶ 45), and held the right to terminate Scottsdale Inn's franchisee agreement if it failed to comply with its requirements (FAC ¶ 81). These allegations are sufficient to show that there is a plausible agency relationship where Wyndham held control over the means and manner of Scottsdale Inn's work. For these reasons, the Court will not dismiss the TVPRA claim on the basis of vicarious liability.

## IV.    CONCLUSION

Because Plaintiff has failed to sufficiently allege that Wyndham participated in a venture that it knew or should have known was engaged in sex trafficking, Plaintiff's direct

liability theory against Wyndham fails. But Plaintiff adequately pleads facts to support her vicarious liability theory. Therefore, the Court will grant Wyndham's motion only in part.[2]

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant Wyndham Hotels & Resorts, Inc.'s Motion to Dismiss (Doc. 32).

**IT IS FURTHER ORDERED** that Plaintiff shall have until August 21, 2024, to file a motion for leave to amend the Complaint in compliance with Local Rule of Civil Procedure 15.1 and any other applicable rules.

Dated this 22nd day of July, 2024.

Honorable John J. Tuchi
United States District Judge

---

[2] Accordingly, although this Order narrows Plaintiff's theories, her claim against Wyndham survives. The Court therefore declines to decide now whether to grant Plaintiff leave to amend her Complaint, as she requests in her Response (Resp. at 17). Rather, the Court will extend the deadline to file a motion to amend the complaint set forth in the Court's Rule 16 scheduling Order (Doc. 44 at 2) to August 21, 2024. Plaintiff may choose to file a motion for leave to amend prior to that deadline in compliance with Local Rule of Civil Procedure 15.1 and any other applicable rules.