**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe,<br><br>  Plaintiff,<br><br>v.<br><br>Scottsdale Inns LLC, *et al.*,<br><br>  Defendants. | No. CV-23-00759-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Wyndham Hotels & Resorts, Inc.'s (Wyndham) Motion to Dismiss Second Amended Complaint (Doc. 79, MTD), to which Plaintiff filed a Response (Doc. 83, Response) and Wyndham filed a Reply (Doc. 84, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Wyndham's Motion.

**I.   Background**

On July 22, 2024, the Court issued an Order (Doc. 68, Order) disposing of Wyndham's motion to dismiss Plaintiff's First Amended Complaint (FAC). In that Order, the Court summarized the facts and procedural posture of this case. The Court incorporates that description herein. Although Plaintiff's Second Amended Complaint (Doc. 74, SAC) includes numerous factual allegations not present in the FAC, the core claims and legal theories remain the same.

Plaintiff claims that Wyndham violated the Trafficking Victims Protection Reauthorization Act, as codified at 18 U.S.C. §§ 1591(a), 1595(a), by acting as the

franchisor of a hotel at which Plaintiff was sexually trafficked. As the Court explained in its prior Order, "[t]o state a claim under a § 1595(a) beneficiary theory, a plaintiff must allege facts from which the Court can reasonably infer that a defendant (1) 'knowingly benefit[ted] financially or by receiving anything of value,' (2) from participation in a venture, (3) which the defendant 'knew or should have known has engaged in' sex trafficking." (Order at 4 (quoting 18 U.S.C. § 1595(a)).) Wyndham conceded that the first element had been met, but it argued that it had not participated in any venture which it knew or should have known was engaged in sex trafficking. (Order at 4.)

Plaintiff presented several alternative theories of liability, each of which Wyndham attacked. In support of a theory of direct liability, Plaintiff argued that Wyndham had participated in two different ventures within the meaning of the statute. (Order at 4.) First, Plaintiff asserted that Wyndham participated in a sex-trafficking venture directly with the man who sexually trafficked her. The Court rejected this contention, holding that "Plaintiff 'fails to connect the dots between Plaintiff's alleged sex Trafficking' and Wyndham." (Order at 6 (quoting *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020)).) Next, Plaintiff argued that Wyndham had participated in a commercial venture with its franchisee, a Howard Johnson branded hotel in Scottsdale, and that this commercial venture satisfied the textual requirements of § 1595(a). The Court accepted this proposition. (Order at 6.) Therefore, Plaintiff satisfied the second element of her direct-liability claim. However, Plaintiff floundered on the third element.

> But while Plaintiff's allegations may support a theory that the staff at the Howard Johnson knew or should have known about her trafficking, Plaintiff fails to allege how *Wyndham* knew or should have known about her trafficking. Plaintiff argues that Wyndham should have known of the sex trafficking through the reporting procedures in place, but she also specifically alleges that Wyndham's franchisee failed to report the alleged sex trafficking. And although Plaintiff alleges Wyndham inspected the Howard Johnson, she does not allege any details about what the inspections entailed, nor does she allege that during its inspections, Wyndham actually observed the signs of her trafficking. Plaintiff thus fails to sufficiently allege facts

supporting either Wyndham's actual or constructive knowledge of her trafficking. Therefore, the Court will grant Wyndham's Motion to Dismiss with respect to the direct liability theory.

(Order at 7–8 (internal citation omitted).) Thus, Plaintiff failed to state a claim premised on a theory of direct liability.

Plaintiff also based her claim for relief on a theory of vicarious liability, whereby Wyndham allegedly bears liability under principles of agency law for its franchisee's having knowingly benefitted from participation in a venture that it knew or should have known was engaged in sex trafficking. The Court accepted this legal theory. (Order at 8–9.) Therefore, the Court dismissed Plaintiff's FAC only with respect to its assertion of direct liability. Nevertheless, despite the survival of her overall claim, Plaintiff sought leave to amend her pleading in order to revive her theory of direct liability. (Doc. 71.) The Court granted Plaintiff leave to amend. (Doc. 73.) In her SAC, Plaintiff presents the same arguments that were present in her FAC. She contends that Wyndham is directly liable to her as a participant in a venture that was engaged in sex trafficking. (SAC at 42–43.) And she once again presents two alternative ventures that Wyndham allegedly participated in: (1) a sex-trafficking venture with the man who sexually trafficked her and (2) a commercial venture with its franchisee hotel. (SAC at 43–45.) As before, Plaintiff also presents a distinct theory of vicarious liability, under which Wyndham would be liable for the actions of its franchisee.[1] (SAC at 45.)

In the instant MTD, Wyndham commendably does not attempt to reopen the Court's prior ruling. Thus, Wyndham does not contest the *prima facie* sufficiency of Plaintiff's allegations supporting vicarious liability or the existence of a commercial venture between Wyndham and its franchisee. Instead, Wyndham simply argues that the new factual

---

[1] Plaintiff also brings claims directly against the franchisee hotel and several entities and individuals associated with the hotel. These claims are not at issue here. However, it is worth noting that, although the FAC argued that both Wyndham and the franchisee defendants were "perpetrators" under § 1595(a), the SAC asserts that only the franchisee defendants are perpetrators. (SAC ¶ 107.) "Perpetrator liability" is different from "participant liability," also known as beneficiary liability. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023). Because this Order pertains solely to the claim against Wyndham, the Court confines its analysis to beneficiary liability.

allegations in the SAC do not remedy any of the FAC's infirmities and that the Court should therefore affirm its prior ruling dismissing the theory of direct liability, this time with prejudice.

## II. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III.   Discussion**

   **A.   Participation in a Venture**

As already noted, the elements of a claim for direct liability under a § 1595(a) beneficiary theory are that (1) the defendant knowingly benefited (2) from participation in a venture (3) that the defendant knew or should have known was engaged in sex trafficking. As in its prior MTD, Wyndham does not contest the first element. Regarding the second element, the parties dispute whether the SAC makes a *prima facie* showing that Wyndham participated in a sex-trafficking venture with the man who sexually trafficked Plaintiff.

At the outset, Plaintiff's position is internally inconsistent. In her SAC, she claims that the franchisee hotel was a "perpetrator" of sex trafficking, but that Wyndham is only indirectly liable as a beneficiary of sex trafficking. (SAC ¶¶ 107, 109.) If the alleged venture was itself a sex-trafficking venture, then there would appear to be no meaningful distinction between perpetrator liability and beneficiary liability. But that contradicts the consensus interpretation of § 1595(a). *See G.G.*, 76 F.4th at 552 ("Section 1595 creates two kinds of civil liability: perpetrator liability and participant liability."). In *G.G.*, the sex advertising service known as "Backpage" was a perpetrator, not a mere beneficiary like the primary defendant Salesforce.com, which was only engaged in a commercial venture with Backpage. *Id.* Similarly, in the instant case, Plaintiff alleges that the franchisee hotel perpetrated sex trafficking by actively assisting Plaintiff's trafficker and other traffickers. It makes little sense, then, to concede that Wyndham was not a perpetrator of sex trafficking but to assert that it was nevertheless a member of a sex-trafficking venture with the man who sexually trafficked Plaintiff. Wyndham appears to be much more similarly situated to Salesforce.com in *G.G.*, which the Seventh Circuit held was a participant in a commercial venture but not a sex-trafficking venture. *See id.* at 554.

> In short, we agree with the district court that the relevant "venture" under Section 1595 need not be specifically a sex trafficking venture. Rather, as the Eleventh Circuit has acknowledged, the alleged venture can be a commercial venture like running or expanding a business. While a "venture" can certainly run the gamut from an isolated act of sex trafficking to an international sex-

>trafficking enterprise, it can also be a business whose primary focus is not on sex trafficking.
>
>Plaintiffs have alleged such a venture here. By 2013, plaintiffs allege, Backpage found itself in need of a partner who could facilitate and support Backpage's exponential growth. The "venture" was Backpage's business itself, including the growth, expansion, and profitability of that business.

*Id.* (cleaned up) (internal quotation marks and citations omitted). Here, as in *G.G.*, it is unlikely (and unnecessary) that Wyndham participated in a sex-trafficking venture, as evidenced by Plaintiff's acknowledgement that Wyndham was not a perpetrator of sex trafficking.

Moreover, the Eleventh Circuit has held that the following allegations "do nothing" to establish *prima facie* participation in a sex-trafficking venture, as opposed to a commercial venture that may have been engaged in sex trafficking: licensing a hotel brand; collecting royalty fees on room revenue; owning, managing, supervising, operating, overseeing, and controlling the operation of renting rooms; and being inextricably connected to the renting of rooms. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021). Plaintiff cites no circuit opinions to the contrary. Plaintiff argues that the SAC adequately pleads a sex-trafficking venture involving Wyndham because it alleges that Wyndham played a "central role in renting rooms at the Scottsdale Howard Johnson." (Response at 8.) That allegation supports the existence of a business venture, but it is insufficient to establish participation in a *sex-trafficking venture*. The remainder of Plaintiff's briefing on this issue focuses on the extent to which Wyndham knew or should have known that its hotel operations were creating a "haven" for sex traffickers. (Response at 9.) Those allegations properly pertain to the third element of the § 1595(a) claim, not the second. Actual or constructive knowledge that Wyndham's hotel operations were being used for sex trafficking might establish liability, but it does not transmute a general commercial venture into a sex-trafficking venture. Plaintiff's position disregards the distinct components of the relevant statutory text.

Plaintiff has failed to sufficiently plead that Wyndham participated in a sex-trafficking venture with the man who sexually trafficked her. However, as noted above, this conclusion is inconsequential because the Court already held that Plaintiff has adequately pled that Wyndham participated in a commercial venture within the meaning of § 1595(a). The question is whether Plaintiff has submitted sufficient factual assertions establishing that Wyndham knew or should have known that its commercial venture with its franchisee hotel engaged in acts of sex trafficking. That question, unlike the parties' dispute regarding ventures, is not moot, because the Court's prior Order held that Plaintiff had failed to allege facts supporting such knowledge. Thus, the vitality of Plaintiff's theory of direct liability hinges on whether the SAC ameliorated the deficiencies of the FAC on the issue of Wyndham's knowledge of the alleged sex trafficking occurring at its franchisee hotel.

### B. Knowledge of Sex Trafficking

The Court wrote in its prior Order that Plaintiff's FAC rested on the premise that "Wyndham had actual knowledge of sex trafficking in the hotel industry and had actual and constructive knowledge of sex trafficking at Howard Johnson properties generally." (Order at 7.) Wyndham argues that Plaintiff's SAC is no different and that it again rests on the premise that Wyndham "had actual knowledge of sex trafficking in the hotel industry, as well as actual and constructive knowledge of sex trafficking at franchised Howard Johnson properties generally due to public sources, law enforcement data, online reviews, and red flags." (MTD at 7–8.) Wyndham downplays the allegations contained in the SAC. Although much of the SAC does pertain to generalized knowledge about the hotel industry and Howard Johnson properties writ large, Plaintiff also alleges that Wyndham possessed (or should have possessed) specific knowledge of sex trafficking at the Scottsdale Howard Johnson hotel at issue here and that Wyndham had particularized knowledge of the specific sex trafficking activities that affected Plaintiff. There is no dispute, for purposes of the instant MTD, that Plaintiff has adequately pled that the franchisee hotel itself had actual or constructive knowledge of sex trafficking. Plaintiff asserts that "Wyndham required

Scottsdale Inn and hotel staff to report suspected criminal activity at the Scottsdale Howard Johnson, including suspected sex trafficking" and that "[b]ased on the obvious signs of sex trafficking at the Scottsdale Howard Johnson, Scottsdale Inn was required to, and upon information and belief did, report numerous instances of suspected sex trafficking to Wyndham prior to the trafficking of [Plaintiff]." (SAC ¶¶ 54–55.) Plaintiff also alleges that "[c]ommercial sex trafficking was so pervasive at the Scottsdale Howard Johnson, local law enforcement conducted a sting operation while [Plaintiff] was there. Upon information and belief, Scottsdale Inn and Wyndham were made aware of this sting operation. Despite this, they continued renting rooms that were used for trafficking of [Plaintiff]." (SAC ¶ 63.) Thus, Plaintiff argues that "[g]iven these obvious signs, Wyndham knew or should have known about the trafficking activity that resulted in the trafficking of [Plaintiff] pursuant to its policy or protocol under which Scottsdale Inn and hotel staff were required to, and upon information and belief did, report this suspected sex trafficking activity to Wyndham." (SAC ¶ 66.)

Wyndham attacks these allegations for having been made on information and belief. (MTD at 8–9.) But information and belief is an adequate basis upon which to rest factual allegations when the relevant facts are peculiarly within the possession and control of the defendant. *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017). Although based upon information and belief, Plaintiff's allegations are not conclusory. It is fair to infer, in light of an expectation and requirement that franchisee hotels report instances of sex trafficking to Wyndham, that the franchisee hotel at issue here reported instances of sex trafficking to Wyndham. There is no way for Plaintiff to plead specific facts indicating that such reporting occurred, because Plaintiff lacks access to those facts. Whether the Scottsdale Howard Johnson made Wyndham aware of the sex trafficking occurring on its premises is a fact that is peculiarly within the possession and control of the defendants.

Wyndham also attacks the SAC's allegations as being inconsistent with the allegations in the FAC that implied that the Scottsdale Howard Johnson had failed to report relevant sex-trafficking activities to Wyndham. (Reply at 8.) Wyndham cites *Azadpour v.*

*Sun Microsystems, Inc.*, No. C06-03272 MJJ, 2007 WL 2141079, at *2 n.2 (N.D. Cal. July 23, 2007), for the proposition that a district court may reject allegations in an amended complaint that contradict those in a prior complaint such that the amendment appears to constitute fraud, falsity, or sham. (Reply at 8 n.5.) Plaintiff contends that her FAC was simply inartfully pled and that she never specifically alleged that Wyndham had not received reports of sex trafficking. (Response at 12–13.) Plaintiff also argues that any inconsistency between the two pleadings is immaterial because inconsistent allegations are acceptable so long as they are not the product of bad faith. (Response at 12–13.) The Court agrees with Plaintiff.

> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). Plaintiff cannot have known whether or to what extent Wyndham was made aware of the sex trafficking occurring at its franchisee hotel. Therefore, any inconsistency between her two pleadings does not indicate that she was lying or otherwise acting in bad faith, but instead simply indicates that multiple reasonable inferences are possible given the information available to Plaintiff. The fact that it might be reasonable to infer that the Scottsdale Howard Johnson did not report to Wyndham the sex trafficking occurring at the hotel does not mean that it is unreasonable to infer that such a report did issue. The SAC's allegations support the reasonable inference that Wyndham knew or should have known that its business venture with its franchisee hotel was engaging in acts of sex trafficking. Therefore, Plaintiff has made a *prima facie* showing of direct liability under § 1595(a).

Defendant points out that some of Plaintiff's allegations are irrelevant or insufficiently probative of a violation of § 1595(a) by Wyndham. (*See* MTD at 8.) Because the SAC as a whole states a viable theory of direct liability, the Court need not parse the

individual allegations to determine which are supportive of Plaintiff's claim and which are not.[2] Plaintiff has satisfied the plausibility standard set forth in *Twombly* and *Iqbal*. Therefore, with the exception of Plaintiff's theory that Wyndham participated in a sex-trafficking venture with the man who sexually trafficked her, dismissal is not warranted.

**IT IS THEREFORE ORDERED** granting in part and denying in part Wyndham Hotels & Resorts, Inc.'s Motion to Dismiss Second Amended Complaint. (Doc. 79.)

**IT IS FURTHER ORDERED** dismissing with prejudice only that portion of the Second Amended Complaint setting forth Plaintiff's theory that Wyndham directly participated in a sex-trafficking venture with the man who sexually trafficked her.

Dated this 4th day of November, 2024.

Honorable John J. Tuchi
United States District Judge

---

[2] Among other things, Plaintiff argues that the franchisee hotel's knowledge of sex trafficking can be imputed to Wyndham and thereby support a theory of direct liability. (Response at 16.) This legal proposition seems to blur the line between Plaintiff's theories of direct and vicarious liability, possibly rendering one or the other redundant. Moreover, it is unclear whether it makes sense to use an agent's knowledge to satisfy the *mens rea* requirement of § 1595(a) when the agent is a member of the alleged venture. Such an imputation risks nullifying one of the elements of the statutory cause of action. The Court need not adjudicate this issue now, however, because Plaintiff's SAC independently states a theory of direct liability upon which relief can be granted.